IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| STACEY SUMPTER,<br><br>  Plaintiff,<br><br>vs.<br><br>KNOXVILLE COMMUNITY SCHOOL DISTRICT and CASSI PEARSON, *in her individual capacity*,<br><br>  Defendants. | Case No. 4:25-cv-00421<br><br><br><br>**COMPLAINT**<br>**AND**<br>**JURY DEMAND** |

COMES NOW the Plaintiff and states the following for her cause of action against the Defendants:

## INTRODUCTION

1. This is an action under 42 U.S.C. § 1983, challenging the Defendants' deprivation under color of law of Plaintiff's rights, privileges, and immunities under the First Amendment to the United States Constitution.

## PARTIES

2. Plaintiff Stacey Sumpter is a resident of Marion County, Iowa.

3. Defendant Knoxville Community School District is a public school district located in Marion County, Iowa, organized and existing under the laws of the State of Iowa. It is a political subdivision of the State of Iowa, a local governmental entity, and at all times material to this action acted under color of state law.

4. Defendant Cassi Pearson is the Superintendent of Defendant Knoxville Community School District and a resident of Marion County, Iowa. At all times material to this

action, she was acting under color of state law as the Knoxville Community School District's chief executive officer, and she is sued in her individual capacity.

## JURISDICTION AND VENUE

5.  This action arises under the Constitution and the law of the United States, including 42 U.S.C. § 1983. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) because the claims present federal questions and seek to redress the deprivation of rights secured by the Constitution and laws of the United States of America.

6.  Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because the events giving rise to the claims occurred within this district, and 28 U.S.C. § 1391(b)(1) because the Defendants reside in this district.

## BACKGROUND FACTS

7.  Plaintiff Stacey Sumpter has dedicated her career to aiding people, especially children, with disabilities and impairments.

8.  Before accepting a job as an Associate with the Knoxville Community School District, Ms. Sumpter worked for Progress Industries and Tenco—both companies that provide aid services to people with disabilities—for nearly 20 years.

9.  Ms. Sumpter grew up close to her aunt, a woman with disabilities. Since childhood, Stacey has found fulfillment and joy in aiding those with disabilities and impairments.

10. In June 2018, Ms. Sumpter accepted an Associate position at Knoxville Community School District.

11. As an Associate, Ms. Sumpter was considered a "Classified Employee" by the District.

12. In her role, Ms. Sumpter worked closely with students with disabilities, helping them learn, grow, and succeed in school.

13. Ms. Sumpter loved her job; there was not a day she worked as an Associate where she was unhappy with her work.

14. By all accounts, Stacey was great at her job, and the children she worked with valued her.

15. On September 10, 2025, while off duty and on her own personal Facebook account, Ms. Sumpter posted the comment: "Normally I would say Auf wider sehen; but since that technically means 'til I see you again'… So since I never wish to see you again, to you; I say goodbye 👋"

16. Ms. Sumpter's comment appeared above an image of Charlie Kirk, which read:

Things to remember about Charlie Kirk:
- He said it was a "huge mistake" to pass the Civil Rights Act in 1964
- He blamed "Jewish money" for ruining American Culture
- He said gay people are "destructive" and endorsed having them put to death
- He said the 2nd amendment is worth the cost of "some gun deaths"

17. Ms. Sumpter's comment referred to the killing of conservative activist Charlie Kirk at a political event in Utah that day. The shooting dominated national headlines, was covered in every major news outlet, and was the subject of widespread political debate across the country.

18. Ms. Sumpter's comment was a personal, private expression of her viewpoint towards a matter of public concern.

19. Ms. Sumpter's comment did not threaten anyone, did not incite imminent unlawful action or violence, and was not directed at any member of the school community or broader community.

20. Ms. Sumpter's post did not reference the Knoxville Community School District, her position as an Associate, or the students she worked with.

21. Nothing about Ms. Sumpter's post connected her speech to her employment or the District.

22. Ms. Sumpter's post was not made in a classroom, during work hours, or using school resources.

23. Ms. Sumpter's post was a personal reaction to a high-profile political event: speech on a matter of public concern at the very core of the First Amendment's protections.

24. On September 11, 2025, Ms. Sumpter returned to work as usual without disruption. Nobody mentioned her post and classes went on as normal.

25. That day, community members contacted the District demanding punishment for the content of Ms. Sumpter's speech.

26. Upon information and belief, the politically motivated pressure campaign did not result in any disruption to Ms. Sumpter's work, any failure or inadequacy in her performance, or any threat to disrupt the learning environment.

27. Ms. Sumpter's speech did not impair discipline by superiors, interfere with close working relationships requiring personal loyalty and confidence, create workplace disharmony, undermine the efficient provision of educational services, or affect Ms. Sumpter's performance of her duties.

28. Upon information and belief, the complaints were about the viewpoint Ms. Sumpter expressed—the content of her speech.

29. Initially, Ms. Sumpter was unaware of the calls. They did not disrupt her ability to do her job or in any way interfere with the District's educational operations.

30. After receiving the complaints, Principal Jory Houser called Ms. Sumpter into his office over lunch and notified her that the District had been receiving complaints about the viewpoint expressed in her post.

31. After this meeting, Ms. Sumpter returned to her job as normal and finished the school day without disruption.

32. That night, Principal Houser called Ms. Sumpter and informed her she was being suspended for the following day due to the content of her Facebook post while the District "investigated."

33. The morning of September 12, 2025, Principal Houser again called Ms. Sumpter. This time, he informed her the District decided to fire her, telling Ms. Sumpter, "We have to let you go."

34. Shortly after, Superintendent Pearson sent Ms. Sumpter a letter informing her the "language used in the post is not respectful and conveys hatred" and that her employment with the District was being "terminated immediately" because of the Facebook post.

35. District policy states that:

[…] The superintendent is authorized to suspend a classified employee with or without pay *pending board action on a discharge* or during investigation of charges against the employee or for disciplinary purposes. It is within the discretion of the superintendent to suspend a classified employee with or without pay. *In the event of a suspension, due process will be followed.* (emphasis added)

Knoxville Community School District Policy 413.3.

36. Ms. Sumpter was terminated the morning after she was suspended, without notice of the potential for her termination, without explanation of the District's evidence against her or opportunity to view it, and without any hearing or other opportunity to present her side of the story.

37. Since her termination, there has been no administrative review that would afford Ms. Sumpter the very due process promised to her by District policy.

38. Defendant Pearson responded swiftly, against District policy, not by examining whether the post had any impact on Ms. Sumpter's ability to aid students or the District's ability to provide educational services in an efficient and effective manner, but by condemning Ms. Sumpter's viewpoint and firing her.

39. The Defendants transformed a moment of public debate into an employment crisis for Ms. Sumpter. Instead of respecting her right as a citizen to comment on political events of the utmost public interest or even respecting her right to due process to present her side of the story, they chose to silence and punish her.

40. The Defendants acted not because Ms. Sumpter's post disrupted the learning environment, but because they disapproved of her protected speech.

41. By terminating Ms. Sumpter's employment for the content of her speech, Defendants wielded state power to punish a citizen for expressing her opinion on political issues. Their actions strike at the heart of the First Amendment and chill the exercise of constitutional rights.

## COUNT I
## FIRST AMENDMENT RETALIATION
## IN VIOLATION OF 42 U.S.C. § 1983

42. Plaintiff repleads paragraphs 1 through 41 as if fully set forth herein.

43. Plaintiff engaged in speech protected by the First Amendment to the United States Constitution on September 10, 2025, when she posted an image and comment on her personal Facebook account regarding a matter of public concern.

44. Plaintiff spoke as a private citizen and not pursuant to her duties as an Associate at Knoxville Community School District.

45. Plaintiff's speech did not reference the Knoxville Community School District, her students, or her employment, and it did not cause, or reasonably threaten to cause, any material disruption to the educational operations of the District.

46. Defendants terminated Plaintiff's employment because of the content and viewpoint of her protected speech.

47. Defendant Cassi Pearson, acting under color of state law and in her capacity as Superintendent, effectuated Plaintiff's termination based on her disagreement with Plaintiff's expression.

48. The Board of Directors of the Knoxville Community School District, acting under color of state law, adopted Defendant Pearson's decision and terminated Plaintiff's employment.

49. Under the Districts' own policy, the Board of Directors possesses final authority over "Classified Employee" terminations after due process has been afforded. The decision to terminate Plaintiff was an official act of the District and constituted final municipal policy. In the alternative, the Board ratified the Superintendent's recommendation with full knowledge of the basis for the action.

50. Plaintiff's protected speech was a substantial or motivating factor in Defendants' decision to terminate her employment, and Defendants cannot show they would have taken the same action absent the speech.

51. The Knoxville Community School District, as a local governmental entity, is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), because the decision

to terminate Plaintiff constituted official policy and was the moving force behind the violation of Plaintiff's constitutional rights.

52. Defendants' actions would deter a person of ordinary firmness from exercising their First Amendment rights.

53. The balance of interests under *Pickering v. Board of Education*, 391 U.S. 563 (1968) favors Plaintiff's right as a citizen to comment on matters of public concern over the District's asserted interests.

54. At the time of the termination, it was clearly established that a public employer may not terminate an employee for speech made as a private citizen on a matter of public concern absent evidence that the speech meaningfully impaired discipline, workplace harmony, or operational efficiency. Defendant Pearson's conduct violated clearly established law.

55. Defendant Pearson acted maliciously or with reckless or callous indifference to Plaintiff's federally protected rights.

56. As a result of Defendants acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages, including but not limited to lost wages and employment benefits, damage to her professional reputation, and emotional distress.

WHEREFORE, Plaintiff seeks judgment against Defendants, jointly and severally, in an amount which will fully and fairly compensate her for her injuries and damages, for prejudgment and postjudgment interest, for appropriate declaratory, equitable, and injunctive relief including but not limited to reinstatement, for punitive damages against Defendant Cassi Pearson in her individual capacity to deter her and other officials from engaging in similar conduct, for attorneys' fees, litigation expenses, and the costs of this action, and for such further relief as is just and appropriate under the circumstances.

## JURY DEMAND

COMES NOW the Plaintiff and demands a trial by jury.

Respectfully submitted,

*/s/ Nathan Borland*
**TIMMER, JUDKINS & BORLAND, P.L.L.C.**
Nathan Borland AT0011802
nate@tjb.law
Chase Potter AT0016150
chase@tjb.law
1415 28th Street, Suite 375
West Des Moines, IA 50266
Telephone: (515) 259-7462
Fax: (515) 361-5390
**ATTORNEYS FOR PLAINTIFF**